Miscellaneous Docket No. 14-108

# United States Court of Appeals for the Federal Circuit

IN RE EMERSON ELECTRIC CO.
and MICRO MOTION, INC.,

*Petitioners.*

*Response to Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in Case No. 6:12-cv-799, Leonard Davis, Judge*

# RESPONSE TO PETITION FOR WRIT OF MANDAMUS

Claudia Wilson Frost
Christopher Richart
DLA PIPER LLP
1000 Louisiana, Suite 2800
Houston, TX 77002
Telephone: 713.425.8401
Facsimile: 713.425.8401
Claudia.Frost@dlapiper.com
Chris.Richart@dlapiper.com

Nicholas G. Papastavros
DLA PIPER LLP
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: 617.406.6000
Facsimile: 617.406.6100
Nick.Papastavros@dlapiper.com

Dale S. Lazar
DLA PIPER LLP
11911 Freedom Dr., Suite 300
Reston, VA 20190
Telephone: 703.773.4149
Facsimile: 703.773.5064
Dale.Lazar@dlapiper.com

*Counsel For Respondent*
*Invensys Systems, Inc.*

December 9, 2013

## CERTIFICATE OF INTEREST

Counsel for Respondent Invensys Systems, Inc. certifies the following:

1.    The full name of every party or amicus represented by me is Invensys Systems, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  None.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: Invensys plc, a publicly held corporation.  No publicly held corporation other than Invensys plc owns 10 percent or more of the stock of Invensys Systems, Inc. Invensys plc is a publicly held corporation that has neither a parent corporation nor a publicly held corporation owning 10 percent or more of its stock.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court, are:  Claudia Wilson Frost, Christopher Richart, and Nicholas G. Papastavros of DLA Piper LLP.

Dated:  December 9, 2013                    Respectfully submitted,

Claudia Wilson Frost
Christopher Richart
DLA PIPER LLP
1000 Louisiana, Suite 2800
Houston, TX 77002
Telephone: 713.425.8401
Facsimile: 713.425.8401
Claudia.Frost@dlapiper.com
Chris.Richart@dlapiper.com

Nicholas G. Papastavros
DLA PIPER LLP
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: 617.406.6000
Facsimile: 617.406.6100
Nick.Papastavros@dlapiper.com

Dale S. Lazar
DLA PIPER LLP
11911 Freedom Dr., Suite 300
Reston, VA 20190
Telephone: 703.773.4149
Facsimile: 703.773.5064
Dale.Lazar@dlapiper.com

*Counsel For Respondent*
*Invensys Systems, Inc.*

Table of Contents

Page

I.    Introduction ................................................................. 1

II.   Issues Presented (Rephrased) .......................................... 3

III.  Statement of Facts ....................................................... 3

      A.   Invensys Has Significant Contacts with Texas and the Eastern
           District, but No Real Connection to Colorado. ................... 3

      B.   Many of Invensys's Witnesses and Documents Are Located in
           or near the Eastern District, and None Are in Colorado......... 4

      C.   Emerson's Witnesses Are Located in Missouri................... 6

      D.   The Accused Coriolis Flowmeters Have a Significant
           Connection to Texas that They Do Not Have to Colorado. ........ 6

IV.   Standard of Review ..................................................... 7

V.    Argument ................................................................ 8

      A.   The District Court Properly Weighed the Private Interest
           Factors.................................................................. 9

           1.   The Relative Ease of Access to Sources of Proof ......... 9

           2.   The Availability of Compulsory Process to Secure the
                Attendance of Witnesses ................................... 11

           3.   The Cost of Attendance for Willing Witnesses........... 13

      B.   The District Court Properly Weighed the Public Interest
           Factors.................................................................. 16

           1.   The Administrative Difficulties Flowing from Court
                Congestion................................................... 16

           2.   The Local Interest in Having Local Disputes Decided at
                Home ....................................................... 17

VI.   Conclusion............................................................... 18

EAST\66723122.4

# TABLE OF AUTHORITIES

## CASES

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*
    867 F. Supp. 2d 859 (E.D. Tex. 2012) .................................................. 9

*Hoffman v. Blaski*
    363 U.S. 335 (1960) ........................................................................... 2

*In re Acer Am. Corp.*
    626 F.3d 1252 (Fed. Cir. 2010) .......................................................... 8

*In re Altera Corp.*
    Misc. No. 121, 2012 WL 2951522 (Fed. Cir. July 20, 2012) ......................... 1, 14

*In re Broadcom Corp.*
    Misc. No. 141, 2013 WL 1736487 (Fed. Cir. Apr. 23, 2013) ............................. 1

*In re Capital One Fin. Corp.*
    Misc. No. 123, 2012 WL 3257815 (Fed. Cir. Aug. 10, 2012) ............................. 1

*In re EMC Corp.*
    Misc. No. 142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) ....................... 1, 2, 14

*In re Genentech, Inc.*
    566 F.3d 1338 (Fed. Cir. 2009) ................................................... 10, 13

*In re HTC Corp.*
    Misc. No. 130, 2012 WL 4198258 (Fed. Cir. Sept. 20, 2012) ............................ 1

*In re Nintendo Co.*
    Misc. No. 151, 2013 WL 5345899 (Fed. Cir. Sept. 25, 2013) .......................... 15

*In re TS Tech USA Corp.*
    551 F.3d 1315 (Fed. Cir. 2008) .......................................................... 7

*In re Volkswagen of Am., Inc.*
    545 F.3d 304 (5th Cir. 2008) ..................................................... passim

*McDonnell Douglas Corp. v. Polin*
    429 F.2d 30 (3d Cir. 1970) (per curiam) ............................................... 16

*McGraw Edison Co. v. Van Pelt*
   350 F.2d 361 (8th Cir. 1965) .................................................................. 8

*State Indus., Inc. v. Mor-Flo Indus., Inc.*
   883 F.2d 1573 (Fed. Cir. 1989) .................................................... 11, 13

*Tegal Corp. v. Tokyo Electron Co.*
   248 F.3d 1376 (Fed. Cir. 2001) ......................................................... 16

## STATUTES

28 U.S.C. § 1404(a) ........................................................................... passim

## OTHER AUTHORITIES

15 CHARLES ALLAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER,
   FEDERAL PRACTICE AND PROCEDURE § 3851, at 227-28 (3d ed. 2007 &
   Supp. 2012) ...................................................................................... 15

15 CHARLES ALLAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER,
   FEDERAL PRACTICE AND PROCEDURE § 3851, at 227-28 (3d ed. 2007) ............... 8

## I.    Introduction

The following facts are undisputed:

- Some of Respondent Invensys Systems, Inc.'s ("Invensys") witnesses are located in the Eastern District of Texas and nearby Houston;

- Relevant non-party witnesses are also located in the Eastern District and elsewhere in Texas;

- All of Petitioner Emerson Electric Co.'s ("Emerson") witnesses are located in Missouri;

- No one has identified any non-party witnesses in Colorado; and

- Some of Invensys's documents are located in the Eastern District of Texas.

These facts alone are sufficient to deny Emerson's and Petitioner Micro Motion, Inc.'s ("Micro Motion") (collectively "Petitioners") mandamus petition.[1]

Nevertheless, disappointed with the outcome in the district court, Petitioners have now chosen to pursue their transfer request in this Court.  Petitioners' arguments are based on a number of factual and legal errors, however.  For example, Petitioners' allegation that this case has no connection to the Eastern District of Texas and is centered in Colorado is simply wrong.  As noted above,

---

[1] In a number of recent cases, this Court has denied mandamus relief when some party or non-party witnesses were in or significantly closer to the transferor district than the transferee district. *See, e.g., In re Broadcom Corp.*, Misc. No. 141, 2013 WL 1736487 (Fed. Cir. Apr. 23, 2013); *In re EMC Corp.*, Misc. No. 142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013); *In re HTC Corp.*, Misc. No. 130, 2012 WL 4198258 (Fed. Cir. Sept. 20, 2012); *In re Capital One Fin. Corp.*, Misc. No. 123, 2012 WL 3257815 (Fed. Cir. Aug. 10, 2012); *In re Altera Corp.*, Misc. No. 121, 2012 WL 2951522 (Fed. Cir. July 20, 2012).

both non-party and party witnesses as well as documents are located in or near the Eastern District. Other witnesses and documents are spread across a variety of venues, including Missouri, Massachusetts, and overseas. Petitioners have identified only two potential witnesses in Colorado, and their claim that a majority of the witnesses are located in Colorado is unsupported by the record, ignores the fact that Invensys is seeking lost profits damages (which will require the testimony of its own personnel), and that Emerson's witnesses are in Missouri.[2]

In addition, Emerson's argument that the location of its witnesses and documents in Missouri should be discounted because it does not infringe improperly requires consideration of the merits.[3] Invensys should not be required to prove its case on a § 1404(a) motion.

---

[2] Micro Motion also claims that some third-party witnesses relevant to its counterclaims are located in Colorado. *See* Pet'rs' Br. at 11 n.5. Given that Micro Motion did not bring its counterclaims until after briefing on the transfer motion was complete, this is completely irrelevant. *See In re EMC Corp.*, Misc. No. 142, 2013 WL 324154, at *2 (Fed. Cir. Jan. 29, 2013) ("Motions to transfer venue are to be decided based on 'the situation which existed when suit was initiated.'" (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960))).

[3] This Court should not consider Emerson's summary judgment motion because that motion was filed months after briefing on the transfer motion was complete and the district court had already denied transfer. Out of an abundance of caution, however, Invensys intends to supplement the record to include its response to Emerson's summary judgment motion (which is due December 11). Invensys's response will prove that there are substantial issues of material fact that preclude summary judgment.

Simply put, Petitioners did not prove in the trial court that Colorado is "clearly more convenient" than the Eastern District of Texas. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). More importantly, they have not proven in this Court that the district court's denial of their transfer motion would produce a "patently erroneous result." *Id.* at 310. Accordingly, their mandamus petition should be denied.

## II.    Issues Presented (Rephrased)

Was the district court's decision that Petitioners failed to prove that trial in Colorado would be clearly more convenient than trial in Texas patently erroneous?

## III.    Statement of Facts

### A.    Invensys Has Significant Contacts with Texas and the Eastern District, but No Real Connection to Colorado.

This is not a case in which Invensys filed suit in a forum with which it has no meaningful connection. To the contrary, Invensys has a real, non-litigation relationship to the Eastern District and to Texas generally. Invensys is headquartered in Houston and has an office in Plano. PA50. Since 2006 to mid-January 2013, Invensys's sales of Coriolis flowmeters in Texas have been approximately $2 million (including sales in Beaumont, Plano, and Longview, which are all in the Eastern District). PA116. Invensys's sales of Coriolis flowmeters in Texas account for approximately a fifth of its U.S. business in this

field, far higher than any other state. *Id.* In contrast, Invensys's sales in Colorado have totaled only about $23,000, less than one percent of Invensys's sales. *Id.*

In addition, the Eastern District represents a potentially larger market for Invensys's Coriolis flowmeters than is reflected by Invensys's historical sales there. Invensys's patented Coriolis flowmeter technology would have differentiated Invensys's products, giving it a competitive edge over Petitioners and allowing Invensys to obtain greater market share. *Id.* In fact, Invensys believes that it could increase its sales in the Eastern District by twenty to thirty times current levels, but its marketing efforts have been hampered by Petitioners' conduct. *Id.* Specifically, Invensys has lost at least two Coriolis flowmeter sales opportunities (Chicago Bridge & Iron and Chevron Pipeline, LLC) in the Eastern District. PA117. Invensys has lost at least two other potential customers (Rhodia and Carlson Engineering) in other parts of Texas. *Id.*

### B. Many of Invensys's Witnesses and Documents Are Located in or near the Eastern District, and None Are in Colorado.

This is not a case in which virtually all the party witnesses will be employees of the defendants. Invensys is a direct competitor of Petitioners in the Coriolis flowmeter market and is seeking lost profits damages. Thus, Invensys's sales, marketing, and technical personnel will be witnesses in this case. A summary of these potential witnesses' testimony and their locations (sorted by proximity to Tyler) is provided in the following table:

| Name | Title | Subject of Testimony | Location |
|------|-------|---------------------|----------|
| Craig Barth | VP, Fin. | Invensys's financial information | Plano, TX |
| Alastaire Davidson | Sr. Dir., Fin. Controls | Invensys's financial information | Plano, TX |
| Tara Kirby | Dir. of Fin. | Invensys's financial information | Plano, TX |
| Mike Reese | Measurement & Instrumentation ("M&I") Bus. Dev. Manager | Sales and marketing of Invensys's Coriolis flowmeters to customers in Texas, including the Eastern District | Kaufman, TX |
| Robert Arias | Prod. Sales Exec., M&I | Sales and marketing of Invensys's Coriolis flowmeters to customers in Texas, including the Eastern District | Houston, TX |
| Mark Avery | Sr. Dir. N. Am. Equip. Bus. | Sales and marketing of Invensys's Coriolis flowmeters to customers in Texas, including the Eastern District | Houston, TX |
| Mark Ferencik | Consulting Systems Analyst | Business analysis of electronic financial information | Foxboro, MA |
| Bob Jones | VP & Gen. Manager of the Foxboro M&I Div. | Sales and marketing of Invensys's Coriolis flowmeters | Foxboro, MA |
| Wade Mattar | Flow Prods. Mktg. Manager | Engineering support for sales and marketing of Invensys's Coriolis flowmeters | Foxboro, MA |
| Michael Plaziak | Principal Software Dev. Eng'r | Design and manufacture of Invensys's Coriolis flowmeters | Foxboro, MA |

*See* PA50-51.  None of Invensys's witnesses are in Colorado.  PA51.  Invensys's sales and financial information and its design documents are also located primarily in Houston, Plano, and Massachusetts (although most of Invensys's documents are stored electronically).[4]  *Id.*

## C.    Emerson's Witnesses Are Located in Missouri.

Emerson simultaneously denies that it infringes and claims that it has no relevant witnesses.  *See* Pet'rs' Br. at 11.  Obviously, however, Emerson will provide witnesses to support its denials, and those witnesses will presumably be located in St. Louis, Missouri where Emerson is headquartered.  In fact, Emerson has already submitted the declaration of  Randall Ledford, an Emerson VP presumably located in Missouri, in support of its claim that it does not infringe.  *See* PA164.

## D.    The Accused Coriolis Flowmeters Have a Significant Connection to Texas that They Do Not Have to Colorado.

The Coriolis flowmeters at issue in this suit are used primarily in the oil and gas field and in refineries, industries that are concentrated in Texas.  *See* PA50-51; *see also* PA57.  In fact, Texas is the largest producer of oil and natural gas in the

---

[4]    Petitioners' assertion that Invensys has admitted that none of its documents are located in Texas is directly contradicted by the very record excerpts they cite.  *See* Pet'rs' Br. at 7.  In his declaration, Bob Jones, an Invensys VP, stated that "Invensys's sales information is primarily kept in Houston, its financial information is stored primarily in Plano, and most design documents are located in Massachusetts."  PA51.

nation and produces far more oil and gas than Colorado. *See* PA69-81. Because of their high accuracy, Coriolis flowmeters play an important role in the oil and gas industry, particularly for custody transfers (*i.e.*, anytime ownership or possession of hydrocarbons changes hands, from the wellhead, to the pipeline, to refining, to transport). PA51. In addition, Texas has "the country's largest concentration of petrochemical plants," PA84, and has twenty-six operating refineries, as compared to only two in Colorado. PA89-90. The Golden Triangle and the Houston ship channel are also some of the most heavily industrialized areas of the country, especially in the refining industry. PA51. Thus, those areas are among the largest markets for Coriolis flowmeters, and all manufacturers of Coriolis flowmeters do significant business there. *Id.* In contrast, Petitioners have made no attempt to show that there is any significant market for their Coriolis flowmeters in Colorado.

## IV. Standard of Review

Because this case comes before the Court on a mandamus petition, it is not enough for Petitioners to show that Colorado is more convenient than Texas or even that the district court abused its discretion when it denied their transfer motion. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Instead, Petitioners must show a "'clear' abuse of discretion such that refusing transfer produced a 'patently erroneous result.'" *Id.* (quoting *In re Volkswagen*, 545 F.3d at 310). Under this highly deferential standard, this Court must uphold

the district court's decision unless it is clear "'that the facts and circumstances are without any basis for a judgment of discretion.'"  *In re Volkswagen*, 545 F.3d at 312 n.7 (quoting *McGraw-Edison Co. v. Van Pelt*, 350 F.2d 361, 363 (8th Cir. 1965)).

## V.    Argument

Invensys's witnesses and documents are located in several forums, including the Eastern District of Texas and nearby Houston.  PA50-51.  None of Invensys's witnesses are located in Colorado.  PA51.  Emerson's witnesses and documents are located in Missouri, not Colorado.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (presuming that the bulk of a party's discovery materials will be located at its corporate headquarters in the absence of contrary evidence).  Micro Motion itself has only identified two witnesses in Colorado, hardly an overwhelming number.  PA29; *see also* 15 CHARLES ALLAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851, at 227-28 (3d ed. 2007) (unidentified witnesses should be disregarded in the transfer analysis).  While non-party witnesses may be located across the country, there are at least two potential non-party witnesses in the Eastern District, and Petitioners have not identified any non-party witnesses in Colorado.  PA117.  These facts amply support the district court's judgment and demonstrate that, contrary to Petitioners' assertions, this case has a genuine connection to the Eastern District of

Texas and is not "Colorado-centric." Pet'rs' Br. at 12. Thus, Petitioners are merely attempting to shift any inconvenience from Micro Motion to Invensys, which is not a proper basis for a § 1404(a) transfer. *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870 (E.D. Tex. 2012) ("'[A] case should not be transferred if the only practical effect is to shift inconvenience from the moving party to the nonmoving party.'" (quotations omitted)).

### A. The District Court Properly Weighed the Private Interest Factors.

#### 1. The Relative Ease of Access to Sources of Proof

The district court concluded that the relative ease of access to proof was a neutral factor in the transfer analysis because "[t]he sources of proof in this case are scattered across the United States and Europe." PA5. That decision is fully supported by the record.

Invensys's financial information is stored primarily in Plano (in the Eastern District), its sales information is kept primarily in nearby Houston, and most of its design documents are in Massachusetts. PA51. Emerson's documents are at its headquarters in Missouri. The attorneys who prosecuted the patents-in-suit are in Washington, D.C. *Id.* Documents related to the development of the patented technology are in Europe. Pet'rs' Br. at 5. Therefore, while Micro Motion's documents may be located in Colorado, other sources of proof are in several forums, including the Eastern District itself.

Petitioners' primary complaint is that the district court "failed to give any weight to the volume and type of evidence that the parties will transport." *Id.* at 17. Tellingly, however, Petitioners did not introduce any evidence discussing the respective quantities of documents the parties possess or suggesting that Petitioners' evidence will be more difficult to transport than Invensys's. Petitioners had the burden of proving that Colorado was "clearly more convenient" than Texas, however, and they cannot complain that the district court failed to consider evidence they failed to submit. *See In re Volkswagen*, 545 F.3d at 315.

Moreover, there is no reason to believe that Petitioners will have significantly more documents than Invensys or that Petitioners' documents will be more important than Invensys's (even assuming the relative importance of the parties' documents is a proper consideration in the § 1404(a) analysis. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343-44 (Fed. Cir. 2009) (noting that it is unnecessary for a district court to weigh the respective importance of the parties' witnesses)).[5] Invensys and Petitioners are direct competitors, and Invensys is seeking lost profits damages. A patentee's ability to supply the market and the

---

[5] The district court noted that accused infringers often have more documents than patentees, but in analyzing the relative ease of access to sources of proof properly relied on the evidence submitted by the parties instead of a general presumption. *See* PA5. The district court relied on the presumption that a party's documents will be located at its headquarters only when evaluating the effect of a transfer on Emerson because Emerson never presented any evidence about the location of its documents or witnesses. *See id.*

amount of profits it would have made but for the infringement are elements of a

lost profits claim under the *Panduit* standard. *See State Indus., Inc. v. Mor-Flo*

*Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989). Thus, information on

Invensys's financial capability, sales, and its own patent-practicing products are

material and relevant. In fact, Petitioners have acknowledged that damages is one

of the major issues in any patent case. PA172. Simply put, technical documents

related to the accused flowmeters will certainly be relevant, but Invensys's

financial and sales documents (which are primarily located in or near the Eastern

District) will be equally critical in this case.

### 2. The Availability of Compulsory Process to Secure the Attendance of Witnesses

The district court held that the availability of compulsory process to secure

the attendance of witnesses weighed slightly against transfer because Invensys

identified two non-party witnesses who could be subpoenaed for both trial and

deposition in the Eastern District, but Petitioners failed to identify even a single

non-party witness in Colorado.[6] PA6. These facts are confirmed by the record,

and Petitioners do not appear to dispute them. *See* PA117.

Instead, Petitioners argue that the district court erred by failing to account

for the presence of non-party witnesses in other districts who could not be

---

[6] Invensys also identified two other non-party witnesses in Texas who could be subpoenaed for trial under Rules 45(c)(3)(A)(ii) and 45(c)(3)(B)(iii). *See* PA117.

subpoenaed in either the Eastern District of Texas or Colorado. *See* Pet'rs' Br. at 19. These witnesses were not "ignored" by either Invensys or the district court; they are simply not relevant to the transfer analysis because they could not be compelled to appear in either forum. Thus, regardless of the location of third-party witnesses that would be beyond the subpoena power of both district courts, the fact remains that Invensys identified two non-party witnesses who could be subpoenaed in the Eastern District, while Petitioners did not identify any in Colorado. The district court's holding that this fact "weighs slightly against transfer" was proper. PA6.

Petitioners' suggestion that Invensys's identification of two non-party witnesses in the Eastern District (as well as two additional non-party witnesses in other parts of Texas) is somehow a sham is similarly baseless. *See* Pet'rs' Br. at 19. Invensys has sold approximately $2 million worth of Coriolis flowmeters in Texas, accounting for approximately one-fifth of its U.S. business in this field, while its sales of flowmeters in Colorado has been a negligible $23,000. PA116. In addition, Invensys believes that it could increase its sales in the Eastern District by twenty to thirty times current levels but for Petitioners' conduct. *Id.* More generally, the oil and gas and refinery industries—two of the biggest markets for Coriolis flowmeters—are concentrated in Texas, not Colorado. *See* PA50-51; *see also generally* PA69-102. Therefore, it is unsurprising that a significant number of

non-party witnesses are located in Texas while comparatively few will be in other districts, and none are likely to be found in Colorado.

### 3.   The Cost of Attendance for Willing Witnesses

The district court determined that the cost of attendance of willing witnesses was neutral because there were party witnesses in both Texas and Colorado. PA8. Again, this conclusion is amply supported by the record. Invensys identified three witnesses in Plano (in the Eastern District of Texas), one witness in Kaufman (near Dallas on the border of the Eastern District), and two in Houston (only 200 miles from the district court). PA50-51. Invensys also has witnesses in Massachusetts. *Id.* Invensys has no witnesses in Colorado, however. PA51. In addition, most of the inventors are located overseas, Pet'rs' Br. at 5, and all of Emerson's witnesses are located in Missouri where it is headquartered. In contrast, Petitioners identified only two witnesses in Colorado. PA29.

Petitioners initially argue that the district court failed to account for the fact that some of Invensys's Texas witnesses have information on the same subjects, namely its finances and sales.[7] Although there may be some overlap in the topics covered by Invensys's Texas witnesses, this is equally true of Micro Motion's

---

[7] Information on these subjects is relevant to Invensys's lost profits claim. *See State Indus.*, 883 F.2d at 1577. Similarly, Petitioner's suggestion that the Texas witnesses are not "key witnesses" is irrelevant. *See In re Genentech*, 566 F.3d at 1344 (noting that once a party has identified witnesses relevant to issues in the case "[i]t was not necessary for the district court to evaluate the significance of the identified witnesses' testimony").

Colorado witnesses. The only two party witnesses Micro Motion identified are both engineers with knowledge about the accused Coriolis flowmeters. *Id.* Micro Motion does not indicate how (or even if) their testimony would differ. In fact, the topics about which Micro Motion's witnesses will testify include the "conception, design, development, [and] engineering" of the accused products, all of which will likely involve substantial duplication. Pet'rs' Br. at 21. The alleged "redundancy" cited by Micro Motion does not justify an inference that its witnesses are either less redundant or more numerous than Invensys's.[8]

Similarly, Petitioners criticize the district court for failing to properly account for "the sheer breadth and volume of Micro Motion's Colorado witnesses," only two of which Micro Motion actually identified. Pet'rs' Br. at 21-22. As an initial matter, Petitioners submitted no evidence about the "breadth and volume of Micro Motion's witnesses" nor is there anything in the record supporting their claim that the witnesses they named "were two of many witnesses

---

[8] Petitioners also take umbrage with the fact that Invensys described several of its witnesses as "potential" witnesses. *Id.* Invensys should not be required to produce a definitive witness list in response to a transfer motion, and its reference to potential witnesses was fully consistent with precedent from both the Fifth Circuit and this Court. *See, e.g., In re EMC Corp.*, Misc. No. 142, 2013 WL 324154, at *3 (Fed. Cir. Jan. 29, 2013) (referring to potential witnesses); *In re Altera Corp.*, Misc. No. 121, 2012 WL 2951522, at *2 (Fed. Cir. July 20, 2012) (same); *In re Volkswagen*, 545 F.3d at 317 (same). Moreover, Micro Motion has never indicated that the two engineers it identified will actually appear at trial. Accordingly, Petitioners' complaints are equally applicable to their own evidence.

located in Colorado." *Id.* Micro Motion stated that its witnesses are all located in Colorado, but made no attempt to quantify the number of Colorado witnesses it had. *See* PA28-29. Because Petitioners had the burden of proving that Colorado was a "clearly more convenient" forum than Texas, they cannot complain about the absence of evidence they failed to submit. *See In re Volkswagen*, 545 F.3d at 315.

Likewise, the district court's decision to give little weight to an indeterminate number of unnamed Micro Motion witnesses supposedly located in Colorado was completely proper:

> If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the application for transferring the case should be denied . . . .

15 Charles Allan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3851, at 227-28 (3d ed. 2007 & Supp. 2012) (collecting over 100 cases).

Finally, all of Petitioners' arguments ignore Emerson's presence in this case. While Emerson denies infringement, a § 1404(a) motion is not the proper vehicle for resolving merits disputes.[9] *See In re Nintendo Co.*, Misc. No. 151, 2013 WL

---

[9] Although Emerson's non-infringement arguments are irrelevant to the transfer analysis, it is worth noting that those arguments are riddled with omissions. For example, Emerson's only argument in support of its claim that it does not induce infringement is that it is not involved in the design of the accused Coriolis flowmeters. *See* PA165-66, 170. Designing an infringing product is not the

5345899, at *7 (Fed. Cir. Sept. 25, 2013) ("[A] trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case."); *see also McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30-31 (3d Cir. 1970) (per curiam) ("Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected . . . ."). In addition, the witnesses Emerson will need to support these denials will be located in Missouri where Emerson is headquartered. In fact, Emerson has already submitted the affidavit of one such witness. *See* PA164.

### B.    The District Court Properly Weighed the Public Interest Factors.

#### 1.    The Administrative Difficulties Flowing from Court Congestion

Although the District of Colorado generally resolves patent cases more quickly, the Eastern District of Texas generally brings patent cases to trial more quickly.    Accordingly, the district court concluded that any administrative

---

only way to induce infringement, however. *See Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) (holding that active inducement of infringement "is as broad as the range of actions by which one in fact causes, or urges, or encourages, or aids another to infringe a patent" and excludes only accidental or inadvertent conduct (quotations omitted)).    Moreover, contrary to Emerson's assertions, Invensys does not seek to hold Emerson vicariously liable for Micro Motion's infringement.    Emerson is liable for its own acts of direct and indirect infringement.

difficulties flowing from court congestion were neutral in the transfer analysis. PA9.

Petitioners take issue with the district court's analysis because this case has been set for trial 2.9 years after it was filed, above the 2.1 average in the Eastern District. Pet'rs' Br. at 23. Of course, Petitioners ignore the fact that patent cases in Colorado take an average of 3.2 years to reach trial, still longer than the scheduled trial date in this case. Petitioners also ignore the fact that this case involves multiple patents and will likely take longer than average to resolve regardless of where it is tried.

### 2. The Local Interest in Having Local Disputes Decided at Home

The district court noted that both Invensys and Emerson have connections to the Eastern District,[10] but that Micro Motion also had strong ties to Colorado. On balance, the district court held that neither forum had a significantly greater interest in the outcome of this dispute. PA10-11. This conclusion is supported by the evidence. *See* PA50, 66.

---

[10] Emerson now insists that a sworn declaration shows that its service center in the Eastern District is operated by a third-party. *Id.* at 26. The declaration Emerson cites was not filed with its briefs on the motion to transfer. Instead, this declaration was filed with Emerson's summary judgment motion months after the district court had already denied transfer. The district court could not have erred by failing to consider evidence that was not before it when it ruled.

17

In addition to the evidence discussed above, Invensys's Texas sales account for one-fifth of its sales of Coriolis flowmeters, far more than any other state. PA116. In contrast, Invensys sells almost no flowmeters in Colorado (and there is no indication that Petitioners have significant sales in Colorado either). *Id.* Invensys also believes that Petitioners' conduct has prevented it from significantly increasing its sales in the Eastern District. *Id.* Two of the biggest markets for Coriolis flowmeters—oil and gas and refining—are also concentrated in Texas, and any manufacturer of Coriolis flowmeters will necessarily do significant business in Texas. PA50-51; *see also generally* PA69-102.

The only local interest Petitioners cite is Micro Motion's reputation. Although Micro Motion and its employees may have some interest in defending their business and professional reputations in their home forum, this concern is attenuated in this case since the primary value of Micro Motion's reputation is its ability to market its products to industries that are concentrated in Texas. In addition, Emerson has the same interest in defending its reputation in its home state of Missouri, which weighs against a transfer to Colorado.

## VI. Conclusion

Of the relevant § 1404(a) factors, the district court correctly found that five were neutral and one slightly favored the Eastern District of Texas. Even if there

were some error in the District Court's analysis, Petitioners have not identified anything warranting mandamus relief. Accordingly, the petition should be denied.

Dated: December 9, 2013                    Respectfully submitted,


_Dale Lazar by permission_

_____
Claudia Wilson Frost
Christopher Richart
DLA PIPER LLP
1000 Louisiana, Suite 2800
Houston, TX 77002
Telephone: 713.425.8401
Facsimile: 713.425.8401
Claudia.Frost@dlapiper.com
Chris.Richart@dlapiper.com

Nicholas G. Papastavros
DLA PIPER LLP
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: 617.406.6000
Facsimile: 617.406.6100
Nick.Papastavros@dlapiper.com

Dale S. Lazar
DLA PIPER LLP
11911 Freedom Dr., Suite 300
Reston, VA 20190
Telephone: 703.773.4149
Facsimile: 703.773.5064
Dale.Lazar@dlapiper.com

***Counsel For Respondent
Invensys Systems, Inc.***

## CERTIFICATE OF SERVICE



**United States Court of Appeals
For the Federal Circuit**

Misc. No. 14-108

-----------------------------------------------------------------)

IN RE EMERSON ELECTRIC CO.
and MICRO MOTION, INC.,
                    *Petitioners.*

-----------------------------------------------------------------)

I, Christopher Richart, on the **9th day of December, 2013**, served two true copies of the within **Response to Petition for Writ of Mandamus** upon the following **via UPS Overnight Delivery.**

FOLEY & LARDNER LLP
Linda E.B. Hansen
Richard S. Florsheim
Jeffrey N. Costakos
Kadie M. Jelenchick
777 East Wisconsin Avenue
Milwaukee, WI 53202
Phone: 414.271.2400
Facsimile: 414.297.4900

*Counsel for Petitioners Emerson Electric Co. and Micro Motion, Inc.*

Additionally, two true copies will be sent to this U.S. District Judge **via UPS Overnight Delivery**:

The Honorable Leonard Davis
Chief District Judge
U.S. District Court, Eastern District of Texas
William M Steger Federal Building and
United States Courthouse
200 W. Ferguson, Third Floor
Tyler, TX 75702
Telephone: 903.590.1084
Facsimile: 903.590.1190

Unless otherwise noted, the original , 3 copies and a pdf copy on disk have been sent by UPS Overnight Delivery to the Court.

December 9, 2013

_____

Christopher Richart

## DECLARATION OF CHRISTOPHER RICHART

I, Christopher Richart, have actual authority to sign this brief and the accompanying certificates and notices on behalf of Dale Lazar.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 9, 2013.

_____
Christopher Richart